In the United States District Court
for the District of South Carolina
Florence Division

| | |
|---|---|
| Brandi Williamson,<br><br>*On behalf of themselves and those similarly situated*,<br><br>　　　　Plaintiff,<br><br>　　　v.<br><br>South Shor, Inc. d/b/a The Peddler Steakhouse, Alan G. Barefoot, and Charles Grant,<br><br>　　　　Defendants. | Civil Action No. 4:17-CV-_____<br><br><br><br>Judge<br><br><br><br>Jury Trial Requested |

Class and Collective Action Complaint

1.　　Brandi Williamson, on behalf of herself and all similarly-situated individuals, bring this action against Defendants South Shor, Inc. d/b/a The Peddler Steakhouse, Alan G. Barefoot, and Charles Grant (collectively "Defendants"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiffs and similarly-situated individuals with minimum wage and overtime wages as required by the Fair Labor Standards Act ("FLSA") and for impermissible deductions in violation of the South Carolina Payment of Wages Act ("SCPWA").

2.　　Defendants own and operate The Peddler Steakhouse in Dillon, South Carolina.

3.　　Upon information and belief, Defendants also operate or have operated Peddler Steakhouse locations in Raleigh, North Carolina, Gatlinburg, Tennessee, Florence, South Carolina, and elsewhere.

4.     Plaintiff and the similarly situated employees she seeks to represent were servers at the Peddler Steakhouse in Dillon, South Carolina.

5.     Defendants have repeatedly violated the FLSA by improperly applying a tip credit to servers' wages.

6.     Defendants require servers to give a percentage of their tips each night to the "house," *i.e.*, to the restaurant itself.

7.     Defendants have not provided proper notice of the tip credit provisions of the FLSA to its servers.

8.     Defendants maintain a policy and practice of underpaying their servers in violation of the FLSA.

9.     All servers at the Peddler Steakhouse, including Plaintiff, are subject to the same or similar employment policies and practices, including policies and practices with respect to wages paid and tips.

10.    Plaintiff brings this action on behalf of herself and similarly situated current and former servers who elect to opt in pursuant to FLSA, 29 U.S.C. § 216(b), to remedy violations of the FLSA wage and hour provisions by Defendants.

11.    Plaintiff brings this action on behalf of herself and similarly situated current and former servers in South Carolina, pursuant to Federal Rule of Civil Procedure 23, to remedy violations of the SCPWA, S.C. Code Ann. § 40-10-30(A).

**I.  Jurisdiction and Venue**

12.    Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

13. Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's South Carolina law claims.

14. Venue in this Court is proper under 28 U.S.C. § 1391(b).

## II. Parties

### Plaintiffs

**Brandi Williamson**

15. Plaintiff Brandi Williamson is an individual residing in Dillon County, South Carolina.

16. Plaintiff has given written consent to join this action.

17. At all relevant times, Plaintiff was an "employee" of Defendants within the meaning of the FLSA and the SCPWA.

### Defendants

**South Shor, Inc.**

18. Defendant South Shor, Inc. is a foreign corporate organized and existing under the laws of the state of South Carolina.

19. Charles Grant is an owner in South Shor, Inc.

20. Alan G. Barefoot is an owner in South Shor, Inc.

21. South Shor, Inc. is an "employer" of Plaintiff and similarly situated servers as that term is defined by the FLSA and SCPWA.

22. "South Shor, Inc. d/b/a The Peddler Steakhouse" is the name that appears on the top of the paychecks Plaintiff received for the work she performed for Defendants.

23. South Shor, Inc. applies or causes to be applied substantially the same employment policies, practices, and procedures to all servers, including policies, practices, and procedures relating to payment of minimum wages, overtime wages, and tips.

24. South Shor, Inc. maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, tip-outs, expense reimbursements, and other practices.

25. South Shor, Inc. has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

26. South Shor, Inc.'s gross revenue exceeds $500,000 per year.

**Charles Grant**

27. Defendant Charles Grant is the founder, owner, and a partner in Myrtle Beach Peddler LP.

28. Charles Grant is an owner of South Shor, Inc.

29. Upon information and belief, Charles Grant lives in South Carolina.

30. Charles Grant has control over South Shor, Inc. and its employees.

31. Charles Grant works at the Peddler Steakhouse on weekday mornings.

32. At all relevant times, by virtue of his role as owner of South Shor, Inc., Charles Grant has been an "employer" of Plaintiff and similarly situated servers as that term is defined by the FLSA.

33. At all relevant times, by virtue of his role as owner of South Shor, Inc., Charles Grant has been actively involved in managing the operations of the The Peddler Steakhouse.

34. At all relevant times, by virtue of his role as owner of South Shor, Inc., Charles Grant has had control over Defendants' pay policies.

35. At all relevant times, by virtue of his role as owner of South Shor, Inc., Charles Grant has had power over personnel and payroll decisions at the Peddler Steakhouse.

36. At all relevant times, by virtue of his role as owner of South Shor, Inc., Charles Grant has had the power to stop any illegal pay practices that harmed Plaintiff and similarly situated employees.

37. At all times relevant, by virtue of his role as owner of South Shor, Inc., Charles Grant has had the power to transfer the assets and liabilities of the Peddler Steakhouse.

38. At all relevant times, by virtue of his role as owner of South Shor, Inc., Charles Grant has had the power to declare bankruptcy on behalf of the Peddler Steakhouse.

39. At all relevant times, by virtue of his role as owner of South Shor, Inc., Charles Grant has had the power to enter into contracts on behalf of the Peddler Steakhouse.

40. At all relevant times, by virtue of his role as owner of South Shor, Inc., Charles Grant has had the power to close, shut down, and/or sell the Peddler Steakhouse.

41. The Peddler Steakhouse functions for Charles Grant's profit.

42. Charles Grant has influence over how the Peddler Steakhouse can run more profitably and efficiently.

**Alan G. Barefoot**

43. Defendant Alan G. Barefoot is the founder and owner of the Peddler Steakhouse.

44. Alan G. Barefoot is an owner of South Shor, Inc.

45. Upon information and belief, Alan G. Barefoot lives in North Carolina.

46. Alan G. Barefoot has control over the Peddler Steakhouse and its employees.

47. At all relevant times, by virtue of his role owner of South Shor, Inc., Alan G. Barefoot has been an "employer" of Plaintiff and similarly situated servers as that term is defined by the FLSA.

48. At all relevant times, by virtue of his role as owner of South Shor, Inc., Alan G. Barefoot has been actively involved in managing the operations of the The Peddler Steakhouse.

49. At all relevant times, by virtue of his role as owner of South Shor, Inc., Alan G. Barefoot has had control over Defendants' pay policies.

50. At all relevant times, by virtue of his role as owner of South Shor, Inc., Alan G. Barefoot has had power over personnel and payroll decisions at the Peddler Steakhouse.

51. At all relevant times, by virtue of his role as owner of South Shor, Inc., Alan G. Barefoot has had the power to stop any illegal pay practices that harmed Plaintiff and similarly situated employees.

52. At all times relevant, by virtue of his role as owner of South Shor, Inc., Alan G. Barefoot has had the power to transfer the assets and liabilities of the Peddler Steakhouse.

53. At all relevant times, by virtue of his role as owner of South Shor, Inc., Alan G. Barefoot has had the power to declare bankruptcy on behalf of the Peddler Steakhouse.

54. At all relevant times, by virtue of his role as owner of South Shor, Inc., Alan G. Barefoot has had the power to enter into contracts on behalf of the Peddler Steakhouse.

55. At all relevant times, by virtue of his role owner of South Shor, Inc., Alan G. Barefoot has had the power to close, shut down, and/or sell the Peddler Steakhouse.

56. The Peddler Steakhouse functions for Alan G. Barefoot's profit.

57. Alan G. Barefoot has influence over how the Peddler Steakhouse can run more profitably and efficiently.

### III.    Facts

### CLASSWIDE FACTUAL ALLEGATIONS

58.    During all relevant times, Defendants have operated the Peddler Steakhouse in Dillon, South Carolina.

59.    Plaintiffs and the similarly situated persons they seek to represent are current and former servers or other employees paid minimum wage minus a tip credit (herein, "servers") employed by Defendants at the Peddler Steakhouse in Dillon, South Carolina.

60.    All servers employed by Defendants over the last three years had essentially the same job duties – to serve food and drinks to customers.

61.    At all relevant times, Defendants paid servers below minimum wage.

62.    Defendants purported to pay servers tip credit minimum wage, which is $2.13 per hour.

63.    However, Defendants failed to satisfy all of the requirements in taking a tip credit from servers' wages. Specifically, Defendants required servers to share tips with the "house," or the restaurant itself.

64.    Servers have complained to Defendants about the house tip-out, but the policy was not changed.

65.    Defendants failed to provide proper notice to servers that they would be taking a tip credit from their wages.

66.    Defendants required servers to pay 10% of their total tips directly to the restaurant.

67.    At the end of each night, the servers pool their tips together and enter the total amount of tips received in a notebook inside the restaurant. The servers take 10% of the total

tips, place it in an envelope, and slip it under the office door for management.

68. Defendants kept the tips they received from their servers.

69. Defendants required servers to purchase slip-resistant work shoes to work at Peddler Steakhouse.

70. Defendants required servers to purchase black slacks, a black shirt, and a black tie to wear as a uniform.

71. Defendants required server to purchase and/or provide their own tools of employment, such as pens and paper.

72. On some occasions, servers spend some amounts of time—10 or 15 minutes—off the clock at the end of their shifts because they are shutting down the restaurant and calculating tip shares.

## PLAINTIFFS' INDIVIDUAL FACTUAL ALLEGATIONS

73. Consistent with their policies, patterns, and practices as described herein, Defendants harmed Plaintiff, individually, as follows:

74. Brandi Williamson worked as a server at the Peddler Steakhouse in Dillon, South Carolina from approximately 2012 until the present.

75. Plaintiff typically worked 25-30 hours per week for Defendants.

76. As a server, Plaintiff's primary job duties included waiting on guests.

77. Plaintiff was paid $2.13 per hour for all hours worked.

78. Plaintiff was never informed of the tip credit provisions of the FLSA by Defendants. When she was hired, she was not told anything about how she would be paid or the requirements for taking a tip credit by Defendants.

79. At the end of each shift, Plaintiff was required to gather all of her tips together with the other servers, and to give 10% of the total tips to the restaurant itself. The remainder of the tips were slip between the servers based on the number of hours each of them worked on that particular day. These payments were documented in a notebook inside the restaurant.

80. Plaintiff was required to purchase non-slip shoes, a black dress shirt, black slacks, and a black tie to wear as a uniform for the benefit of Defendants.

## IV. Collective Action Allegations

81. Plaintiff brings the First Count on behalf of herself and all similarly situated current and former servers employed at the Peddler Steakhouse owned, operated, and controlled by Defendants in Dillon, South Carolina, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

82. At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked, failing to properly inform servers of the tip credit requirements of the FLSA, and requiring servers to make tip-out payments to the restaurant itself. Plaintiff's claims are essentially the same as those of the FLSA Collective.

83. Defendants' unlawful conduct is pursuant to a corporate policy or practice of minimizing labor costs by failing to properly pay Plaintiff and the FLSA Collective.

84. Defendants are aware or should have been aware that federal law requires them to inform any employee from whose wages they intend to take a tip credit of the tip credit provisions of the FLSA.

85. Defendants are aware or should have been aware that federal law prohibits them from paying employees tip credit minimum wage unless they adhere to certain rules, including rules against misappropriating employee tips.

86. Defendants are aware or should have been aware that federal law prohibits them from taking deductions from employees' wages for certain uniforms and other expenses.

87. Defendants' unlawful conduct has been widespread, repeated, and consistent.

88. The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

89. The FLSA Collective members are readily identifiable and ascertainable.

90. For the purpose of notice and other purposes related to this action, the FLSA Collective members' names and contact information are readily available from Defendants' records.

91. In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

**V.     South Carolina Class Action Allegations**

92. Plaintiff brings the Second Count under Federal Rule of Civil Procedure 23, on behalf of themselves and a class of persons consisting of:

> All persons who work or worked as servers and/or have been paid minimum wage minus a tip credit at the Peddler Steakhouse in Dillon, South Carolina between November 7, 2014 and the date of final judgment in this matter (the "South

Carolina Class").

93. Excluded from the South Carolina Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the South Carolina Class.

94. The number and identity of the South Carolina Class members are ascertainable from Defendants' records. The hours assigned and worked, the positions held, and the rates of pay, tips received, and deductions made from the pay of each South Carolina Class Member are also determinable from Defendants' records. For the purpose of notice and other purposes related to this action, their names and contact information are available from Defendants. Notice can be provided by means permissible under Federal Rule of Civil Procedure 23.

95. The South Carolina Class members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

96. There are more than 50 South Carolina Class members.

97. Plaintiff's claims are typical of those claims which could be alleged by any South Carolina Class member, and the relief sought is typical of the relief which would be sought by each South Carolina Class member in separate actions.

98. Plaintiff and the South Carolina Class members were subject to the same corporate practices of Defendants, as alleged herein, of having their tips unlawfully deducted by Defendants.

99. Plaintiff and the South Carolina Class members have all sustained similar types of damages as a result of Defendants' failure to comply with S.C. Code Ann. § 41-10-10, *et seq*.

11

100. Plaintiff and the South Carolina Class members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct. Defendants' corporate-wide policies and practices affected all South Carolina Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the South Carolina Class members.

101. Plaintiff and the South Carolina Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

102. By seeking to represent the interests of the South Carolina Class members, Plaintiff is exercising and intends to exercise her right to engage in concerted activity for the mutual aid or benefit of herself and her co-workers.

103. Plaintiff is able to fairly and adequately protect the interests of the South Carolina Class and have no interests antagonistic to the South Carolina Class.

104. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

105. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual South Carolina Class members are small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it extremely

difficult or impossible for the individual South Carolina Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in significant saving of these costs. The prosecution of separate actions by individual class members would create a risk of inconsistent and/or varying adjudications with respect to the individual South Carolina Class members, establishing incompatible standards of conduct for Defendants and resulting in the impairment of the South Carolina Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

106.    Upon information and belief, Defendants and other employers throughout the state violate S.C. Code Ann. § 41-10-10, *et seq*. Current employees are often afraid to assert their rights out of fear of direct and indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

107.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

108. Common questions of law and fact exist as to the South Carolina Class that predominate over any questions only affecting the South Carolina Class Representatives and the South Carolina Class members individually and include, but are not limited to:

    a. Whether Defendants took deductions from the wages and/or tips of Plaintiff and the South Carolina Class;

    b. Whether Defendants' policy of taking deductions from the wages and/or tips of Plaintiff and the South Carolina Class was instituted willfully or with reckless disregard of the law; and

    c. The nature and extent of class-wide injury and the measure of damages for those injuries.

109. In recognition of the services Plaintiff has rendered and will continue to render to the South Carolina Class, Plaintiff will request payment of a service award upon resolution of this action.

**VI.    Causes of Action**

<u>**Count 1**</u>
**Failure to Pay Minimum Wages - Fair Labor Standards Act**
**(On Behalf of Plaintiff and the FLSA Collective)**

110. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

111. Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

112. Defendants attempted to take the maximum allowable "tip credit" from the wages of Plaintiff and the FLSA Collective. 29 U.S.C. § 203(m).

113. Plaintiff and the FLSA Collective were not properly informed of the tip provisions of the FLSA.

114. Plaintiff and the FLSA Collective were denied proper minimum wage because they were required to share tips with parties and individuals who are not permitted to be included in a valid tip pool, including Defendants themselves.

115. Plaintiff and the FLSA Collective were denied proper minimum wage because they were required to pay for uniforms and other expenses for the benefit of Defendants.

116. As a result of Defendants' policies and practices, they were not permitted to take a tip credit from the wages of Plaintiff and the FLSA Collective.

117. By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

118. Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

119. As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, liquidated damages, costs, and attorneys' fees.

### Count 2
**Unlawful Deductions from Wages – South Carolina Payment of Wages Act**
**(On Behalf of Plaintiff and the South Carolina Class)**

120. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

121. Defendants are an "employer" of Plaintiff and the South Carolina Class as defined by the SCPWA.

122. Defendants employed Plaintiff and the South Carolina Class within the state of South Carolina.

123. Money received by Plaintiff and the South Carolina Class directly as tips or from the tip pool were "wages" as defined by SCPWA, § 41-10-10(2).

124. Defendants illegally deducted amounts from the wages of Plaintiff and the South Carolina Class without providing proper notice as required by S.C. Code Ann. § 41-10-30(A).

125. Specifically, Defendants required Plaintiff and the South Carolina Class to pay approximately 10% of their tips directly to Defendants.

126. Defendants' unlawful deduction policy was instituted willfully.

127. By making deductions from the tip income of Plaintiff and the South Carolina Class, Defendants have violated the SCPWA.

128. As a result of Defendants' violations of the SCPWA, Plaintiff and the South Carolina Class are entitled to the unlawfully deducted tips, treble damages, attorneys' fees, costs, and injunctive relief.

**WHEREFORE**, Plaintiff Brandi Williamson prays for all of the following relief:

A. Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members;

B. Unpaid minimum wages and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations;

C. A declaratory judgment that the practices complained of herein are unlawful under the FLSA;

D. Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure with respect to the South Carolina Class;

E.     Designation of Plaintiff as representative of the South Carolina Class and counsel of record as Class Counsel;

F.     A declaratory judgment that the practices complained of herein are unlawful under the SCPWA;

G.     An award of unlawfully deducted tips due under the SCPWA;

H.     An award of treble damages under the SCPWA;

I.     An award of prejudgment and post-judgment interest;

J.     An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees; and

K.     Such other legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

/s/ Patrick McLaughlin
Patrick McLaughlin
Fed. I. D. # 9665
Wukela Law Firm
403 Second Loop Rd.
PO Box 13057
Florence, SC 29504-3057
843-669-5634 (Phone)
843-669-5150 (Fax)
(Patrick@wukelalaw.com)

Andrew Kimble (*pro hac vice application forthcoming*)
Trial Counsel
Eric Kmetz (*pro hac vice application forthcoming*)
Markovits, Stock & DeMarco, LLC
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
513-651-3700 (Phone)
513-665-0219 (Fax)
(akimble@msdlegal.com)
(ekmetz@msdlegal.com)
*Counsel for Plaintiffs*

## Jury Demand

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

/s/ Patrick McLaughlin